UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSE JAVIER FRANCO RIVERA,<br>    Plaintiff,<br><br>        v.<br><br>UNITED PARCEL SERVICES,<br><br>    Defendant. | *<br>*<br>*<br>*    CIVIL NO. 11-1765(PG)<br>*<br>*<br>*<br>* |

**OPINION AND ORDER**

Pending before this Court is Defendant United Parcel Services' (hereinafter referred to as "UPS") Motion for Summary Judgment (Docket No. 36) and accompanying Statement of Uncontested Material Facts (hereinafter referred to as "SUMF") in support thereof. Upon examination of the record and with the benefit of hearing the parties at the Settlement Conference held on February 4, 2013, this Court Grants the Defendant's Motion for Summary Judgment.

**STANDARD FOR SUMMARY JUDGMENT**

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue is one that is dispositive and must be resolved at trial because a reasonable jury could resolve in favor of the non-moving party. Arvelo v. American International Insurance Co., 875 F. Supp. 95, 99 (D.P.R. 1995). Moreover, a fact is material if under applicable substantive law it may affect the result of the case.

Civil No. 11-1765(PG)                                                   2

See, Ortega-Rosario v. Alvarado-Ortiz, 917 F.2d 71, 73 (1st Cir. 1990).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. Once a moving party has made a showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to demonstrate that a trial worthy issue remains. See, Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997); Borschow Hosp. & Med. Supplies Inc., v. Cesar Castillo, Inc., 96 F.3d 10,14 (1st Cir. 1996). The non-moving party must set forth specific facts in proper evidentiary form substantiating that a genuine factual issue exists for trial. Nevertheless, in determining whether summary judgment is warranted, the court views the facts alleged in the light most favorable to the non-moving party and must indulge all inferences in favor of that party. Rossy v. Roche Products, Inc., 880 F.2d 621, 624 (1st Cir. 1989).

**FACTUAL BACKGROUND**

On the Complaint, José Javier Franco Rivera (hereinafter referred to as "Plaintiff") asserts that UPS has established a pattern of race discrimination for which he has been adversely affected. Specifically, Plaintiff's claims are based on the following actions: (1) Plaintiff received a different treatment

Civil No. 11-1765(PG)                                                    3

from UPS's Labor Manager José Maldonado ("Maldonado"), than other employees because of his race; (2) there have been discrepancies in Plaintiff's paychecks; (3) UPS owes Plaintiff back pay and penalties; (3) Plaintiff was not considered for the part time position of *Ground Handler*; (4) UPS engages in a pattern of race discrimination, as evident by an incident involving Antonio Rivera,(hereinafter referred to as "Rivera"), a black male employee, who was fired by John Morales (hereinafter referred to as "Morales") who was Labor Manager at the time, for putting his seat belt on after he started the vehicle while another white employee committed the same violation and only received a reprimand; (5) Plaintiff has suffered modifications in his payrate.

Plaintiff also claims that UPS retaliated against him for having filed a discrimination charge before the Puerto Rico Department of Labor's Anti-Discrimination Unit (hereinafter referred to as "ADU") on May 28, 2010. Particularly, he alleges that Morales was not amenable to granting him sick leave after he suffered a back injury and that UPS changed his work schedule to his detriment.

## **DISCUSSION**

Defendant requests that summary judgment be granted in its favor on various grounds. First, Defendant argues that some of Plaintiff's claims are time-barred and that, even assuming that they are not, Plaintiff admitted in his deposition that the alleged actions were not related to his race but were based on legitimate non-discriminatory reasons.

Civil No. 11-1765(PG) 4

Additionally, Defendant contends that Franco has not put forth any direct evidence of discrimination and was unable to identify during his deposition any racial comments, slurs or statements uttered by the relevant decision makers. SUMF ¶¶7, 21, 29, 47, 67, 85 and 88. Hence, Defendant purports that there are no material facts in controversy that would prevent summary disposition of Plaintiff's claims.

The case of <u>McDonnell Douglas Corp v. Green</u>, 411 U.S. 792 (1973) provides a framework to analyze the evidence to support a prima facie case of discrimination based on a protected status such as race. Pursuant to the <u>McDonnell</u> ruling, the plaintiff in a Title VII case must carry the initial burden of establishing a prima facie case of racial discrimination. See, <u>McDonnell</u>, 411 U.S. at 802. If the defendant articulates a legitimate and non-discriminatory reason for its employment actions, the burden shifts to plaintiff to prove, by a preponderance of the evidence, that the employer's reasons were merely a pretext for discrimination.

Plaintiff has failed to meet that burden. For starters, it is uncontested that Plaintiff continues to be employed at UPS. Moreover, there is no controversy that Plaintiff has received salary increases consistently, pursuant to the Collective Bargaining Agreement (hereinafter the "CBA") between UPS and the Union de Tronquistas de Puerto Rico Local 901 (hereinafter the "Union"). SUMF ¶69.

At the Settlement Conference, the parties explained their respective positions as to the issues raised in the Motion for Summary Judgment. Let us examine them in detail.

Civil No. 11-1765(PG)                                                    5

## I. **The "Air Schedule Driver" Position**

In the Complaint, Plaintiff alleges that UPS removed him from the "Air Schedule Driver" position because of his race. See, Docket No. 1, ¶12. Even though Plaintiff recognizes that the event is time-barred, the Court will briefly touch on the removal insofar as Plaintiff claims that the position was then given to another employee, José Maldonado (hereinafter "Maldonado"), who is white, with the intention of "humiliating" him.[1] See, Dkt. No. 1, ¶12.

In its Motion for Summary Judgment, Defendant highlights numerous facts that show UPS's valid, non-discriminatory reason to remove Plaintiff from the "Air Schedule Driver" position. The records shows that Plaintiff's removal was the result of a stipulation reached between UPS and the Union, of which Plaintiff is a member. SUMF ¶¶17-20. In fact, Plaintiff admitted in his deposition that the decision to award the position to Maldonado was "unrelated to his [Franco's] race." SUMF ¶¶21.

Plaintiff also concedes that he then returned to his previous position as a part-time "Air Schedule Driver." See, Docket No. 1,¶16. The evidence presented shows that, pursuant to the CBA, once Maldonado was awarded the "Air Schedule Driver position," Plaintiff had the right to "bump" the part-time employee with the least seniority. SUMF ¶¶22. At the time, that position was "Night Sorter" which required the employee to work the overnight shift. SUMF ¶23.

Rather than assigning Plaintiff to such a position, UPS kept

---

[1] See, Dkt. No. 1, ¶13.

Civil No. 11-1765(PG)                                                      6

him as a part-time "Air Schedule Driver" because he was an "efficient employee." SUMF ¶¶24-26. Plaintiff has not shown that the decision was detrimental to him in any way, much less that it was motivated by a discriminatory animus on UPS's part.

## II. Discrepancies in Plaintiff's Paychecks

Plaintiff asserts that UPS owes him penalties from a reduction in salary that was subject to an arbitration proceeding and resulted in a settlement agreement between UPS and the Union. See, Docket No. 1, ¶¶22-23.

It is worth noting that, during the Settlement Conference, the parties agreed that any controversy regarding salary discrepancies must be raised in an arbitration proceeding as required by the CBA. In fact, the parties are presently involved in such a proceeding for that same issue. Hence, the Court is hard-pressed to consider an issue that is clearly within the scope of those actions that the CBA prescribes for arbitration.

Even absent such a contractual specification, the record is uncontested as to the fact that Plaintiff did not show that the pay rate discrepancies were attributed to a discriminatory action on account of his race. There is no factual controversy regarding the procedure that UPS follows for issuing paychecks.

UPS's payroll is processed in Dallas, Texas. SUMF ¶50. The system is based on the use of codes entered for each one of the tasks that the employee performs. SUMF ¶¶52-54. Different tasks have different codes and different pay rates per hour. SUMF ¶58. When an employee performs other tasks outside of his position, the system does not recognize the difference in pay rate and issues a paycheck at a lower rate. SUMF ¶59. UPS showed that Plaintiff was

Civil No. 11-1765(PG)                                              7

not the only employee to suffer such discrepancies on his paycheck. SUMF ¶¶60-61. Actually, several other white employees had the same problem. SUMF ¶¶60-61.

What is more, UPS retroactively reimbursed Plaintiff for all the payments that had been remitted to him in error and issued adjustment payments for the amounts. SUMF ¶¶62-63.

Hence, Plaintiff did not establish that the paycheck discrepancies constitute an adverse employment action under Title VII.

### III. **The "Ground Handler" position**

One of Plaintiff's foremost arguments for claiming discrimination is that he applied for, but was not awarded, the position of Ground Handler. Yet his contention is without merit because the record establishes that UPS's determination was not racially-motivated.

As part of its policies and procedures, UPS does not consider employees for positions of lower category and pay rate than that which they occupy. SUMF ¶¶34-35. At the time that the Plaintiff applied for the part-time "Ground Handler" position, his classification and pay rate as a part-time "Air Schedule Driver" were higher. SUMF ¶37.

There is no evidence that UPS took into consideration other criteria for denying Plaintiff such a position. For example, out of the sixteen employees that applied, three, including Plaintiff, were discarded as ineligible for the reason stated above, including two white applicants. SUMF ¶¶36-39.

Thus, Plaintiff was simply ineligible under UPS's guidelines

Civil No. 11-1765(PG)                                                         8

to occupy the "Ground Handler" position. The record is undisputed as to this fact and thus, Plaintiff may not claim that such determination was arbitrary and motivated by his race.

### IV. **The Alleged Disparate Treatment**

Plaintiff emphasizes that he was treated different from the other employees and describes several instances in which Morales allegedly refused to pay attention to his complaints[2]. See, Docket No. 1,¶¶ 19-21. Nevertheless, after reviewing the nature of Morales' actions, it is clear that they amount to nothing more than workplace grievances that are insufficient to establish an adverse employment action. SUMF ¶¶73-74, 77. See, Munday v. Waste Management of N.A., Inc., 126 F.3d 239(4th Cir. 1997) [holding that evidence that employee was ignored by coworkers and top management was insufficient to establish an adverse employment action].

In addition, Plaintiff asserts that he was not assigned to cover the position known as "Feeder Drivers" during the month of December of several years spanning 2002-2010. Despite his claims, UPS has put forth evidence as to the racially-neutral factors, such as seniority and the company's needs, taken into account to determine which employee is assigned to the position. SUMF ¶¶80-83. Another element that the company evaluated was Plaintiff's training in certain set delivery routes. SUMF ¶83.

Plaintiff, on the other hand, produced no evidence that UPS's

---

[2] For example, the Plaintiff claims that some employees called him "Franquiche," yet such a pseudonym could be derived from his last name, Franco. In any case, those remarks do not amount to direct evidence of discrimination against Plaintiff based on his race.

Civil No. 11-1765(PG)　　　　　　　　　　　　　　　　　　　　　　　9

assignment of employees to cover "Feeder Drivers" was racially-motivated.

### V. Other instances of discrimination against UPS' employees

Plaintiff affirms that additional proof of UPS's discriminatory treatment of its employees can be found in an incident involving Rivera's termination. See, Docket No. 1, ¶28. Rivera, who is black, was fired for not using his seatbelt. Plaintiff adduces that such treatment is disparate from the one received by a white employee, Ismael Martínez, who committed the same offense and only received a warning. See, Docket No. 1, ¶28.

Notwithstanding the irrelevancy of the Rivera incident in establishing the adverse actions directed towards Plaintiff, the latter not only relied on it to support his claims but also failed to appraise the Court of its aftermath. Even though Rivera was initially terminated when a Comprehensive Health and Safety Process audit( hereinafter referred to as the "Audit"), was carried out, he was reinstated in his job just three days after as a result of a stipulation between UPS and the Union. SUMF ¶¶90,100-101. It is uncontested that the decision-maker as to the dismissal of Rivera did not know him personally and thus was not aware of his color and/or race. SUMF ¶98.

Indeed, Plaintiff acknowledged in his deposition that he did not know whether race was a criteria considered in Rivera's termination. SUMF ¶106. Therefore, the situation involving Rivera does not in any way support Plaintiff's claims of discrimination.

### VI. Plaintiff's retaliation claim under Title VII

Plaintiff avers that he filed a discrimination charge with the ADU and, as a result, UPS retaliated against him by "altering

Civil No. 11-1765(PG)

10

the terms and conditions" of his employment. See, Docket No. 1, ¶¶31-32, 44. Particularly, Plaintiff claims that UPS forced him to carry out his driving duties in September, 2010 even though he suffered a back condition for which he could not take medication. See, Docket No. 1, ¶31.

On its Motion for Summary Judgment, Defendant points to uncontested material facts showing that no person from UPS's management compelled Plaintiff to perform those driving duties or to stop taking his medication. SUMF ¶14-117. In addition, the Plaintiff was able to take the medication for approximately three to four days and drive without suffering adverse reaction because he took the medication after his shift ended. SUMF ¶116.

Plaintiff's allegation that his work shift was modified in retaliation fares no better. Plaintiff claims that UPS retaliated against him by changing his work schedule from 9:00 a.m.-1:00 p.m. to 6:00 a.m.-10:00 a.m. SUMF ¶108(B). A change in schedule of the type that Plaintiff complains about in this lawsuit does not constitute an adverse employment action. See, Thomas v. Potter, 202 Fed.Appx. 118, 119 (7th Cir. 2006); Otis v. Bd. of Sup'rs of Louisiana State Univ., 275 F.3d 47, 2001 WL 1268969, 1 (5th Cir. 2001). Even more so since Plaintiff's working schedule was due to some administrative changes at UPS. SUMF ¶¶119-120. Furthermore, Plaintiff has failed to point to any evidence on the record suggesting that his change in schedule was meant to exploit "a known vulnerability." See, Porter v. City of Chicago, 700 F.3d 944, 955 (7th Cir. 2012).

In reality, the Plaintiff admitted that, despite the change in schedule, he arrives to work at 8:00-9:00 a.m., at the

Civil No. 11-1765(PG)  11

earliest, and has not been subject to any disciplinary actions for his tardiness. SUMF ¶127-128. But perhaps the most important consideration is that Plaintiff's classification, seniority and salary have not been altered as a result of the change in schedule. SUMF ¶126.

Even if Plaintiff had shown that the actions described were in retaliation for his filing of a discrimination charge, those claims are not before this Court since Plaintiff did not make such allegations in the Complaint and did not amend or supplement his Complaint as to those claims.

Taken as a whole, these uncontested material facts show that Plaintiff lacks evidence to sustain a causal relationship between his charge in the ADU and the alleged discriminatory employment actions.

## CONCLUSION

Accordingly, for the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment as to all claims.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, February 19, 2013.

S/JUAN M. PEREZ-GIMENEZ
JUAN M. PEREZ-GIMENEZ
U.S. District Judge